**ORIGINAL**

Leon Greenberg, Esq.
Leon Greenberg Professional Corporation
Attorney for Plaintiff
633 South 4th Street - Suite 9
Las Vegas, Nevada 89101
(702)383-6085
Fax: (702)385-1827
Nevada Bar Number 8094



UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

-------------------------------X Docket #: CV-S-04-1365-LRH-LRL

JUAN CARMONA MORALES, Individually,
and on behalf of all others similarly
situated,

                   Plaintiffs,

      -against-

ALLIED BUILDING CRAFTS, INC., GYPSUM
CONSTRUCTION, INC., GYPSUM CONSTRUCTION
WEST, INC., ALLIED CONSTRUCTION CRAFTS,
INC., S.W. BUILDING CRAFTS, SEAN MICHAEL
CAVANAUGH, and "John Does", name fictitious,
actual name and number of such persons
being unknown,

                   Defendants.

-------------------------------X

## PLAINTIFF'S MOTION FOR CIRCULATION OF NOTICE OF THE PENDENCY OF THIS ACTION PURSUANT TO 29 U.S.C. § 216(B) AND FOR OTHER RELIEF

Pursuant to 29 U.S.C. § 216(b) the plaintiff, Juan Carmona

Morales, through his attorney, Leon Greenberg, Esq., hereby moves

this Court for an Order directing that other persons similarly

situated to the plaintiff Juan Carmona Morales be given notice of

the pendency of this action and an opportunity to file written

consents with this Court to join this action as party plaintiffs

and for other associated relief including a toll of the statute

of limitations otherwise applicable to such persons' claims for

the period of time that this motion is pending before the Court.

Plaintiff's motion is made and based upon the certification

1  of plaintiff Juan Carmona Morales and the memorandum of points

2  and authorities submitted with this motion and the other papers

3  and pleadings in this action.

4  Dated: Clark County, Nevada
        November 20, 2004

5

6                                  Respectfully submitted,

7

8                                  Leon Greenberg, Esq.
                                   LEON GREENBERG PROFESSIONAL CORPORATION
9                                  Attorney for the Plaintiff
                                   633 South 4th Street - Suite 9
10                                 Las Vegas, Nevada 89101
                                   (702) 383-6085
11                                 Nevada Bar Number: 8094

12

13 TO:

   Littler Mendelson
14 Attorneys At Law
   3960 Howard Hughes Parkway - Suite 300
15 Las Vegas, Nevada 89109-0920
   Attention: Rick D. Roskelley, Esq.

16

17

18

19

20

21

22

23

24

25

26

27

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Plaintiff submits this memorandum of points and authorities in support of his motion to advise persons similarly situated to the plaintiff of the pendency of this action pursuant to 29 U.S.C. § 216(b) ("§ 216(b)") and toll the statute of limitations for such persons to join this action while this motion is pending.  This action is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the "FLSA") for unpaid overtime wages (Exhibit "A", Complaint, First Claim for Relief).  Plaintiff is also making certain related claims under Nevada Law involving violations of Nevada's wage payment statutes and for breach of contract and tortious interference with contract (Complaint, Second through Fourth Claims for Relief).

### PROCEDURAL POSTURE OF THIS CASE

**The Court is Being Asked to Assist
Other Persons in Becoming "Opt In"
Plaintiffs Pursuant to § 216(b)**

This litigation is brought as an "opt in" representative action under § 216(b) in respect to the FLSA claims and an F.R.C.P. § 23 ("Rule 23") "opt out" class action in respect to the Nevada State law claims.  The "opt in" procedure of § 216(b) prohibits any person from being a plaintiff in an FLSA action unless they file a written consent with the Court.  A Rule 23 class action certification of the Nevada State Law claims would bind all persons with such State Law claims unless they "opt out" of this litigation.  These different procedural approaches are

not antagonistic and can be harmonized in a complementary
fashion.  See, Ansoumana v. Gristede's Operating Corp., 201
F.R.D. 81 (S.D.N.Y. 2001), Brzychnalski v. Unesco, Inc., 35 F.
Supp. 2d 351 (S.D.N.Y. 1999), Beltran-Benitez v. Sea Safari, 180
F. Supp. 2d 772 (E.D.N.C. 2001) and the majority of Court
decisions that have examined this issue.

Plaintiff's counsel believes the facts of this case will
ultimately compel Rule 23 class certification of the Nevada State
Law claims but it makes no request for class certification at
this time.  The Court will require a detailed factual record to
consider such a class certification request and no discovery has
been conducted in this case.  This motion only requests the
circulation of notice of the pendency of this action to other
persons pursuant to § 216(b) so that they can "opt in" to this
litigation under the FLSA.  As discussed, infra, an Order
directing the circulation of such notice can, and should, be
granted at this time and upon the record presented with this
motion.

The reason an immediate FLSA § 216(b) "opt in" notice is
appropriate, while a Rule 23 class certification Order is not,
stems from the different processes used by § 216(b) and Rule 23.
Under § 216(b) no person is bound by, or benefits from, an FLSA
litigation unless they "opt in" by filing a written consent with
the Court, and the statute of limitations on such person's FLSA
claim continues to run until they file a consent.  Under Rule 23
all persons, except those who "opt out", are bound by the

4

1   litigation (to their benefit or their detriment) and the statute
2   of limitations is tolled once the representative plaintiff files
3   the litigation.  Rule 23 class actions, because they affect many
4   persons who have made no affirmative choice to join the
5   litigation (they have simply failed to "opt out") require close
6   judicial scrutiny and procedural safeguards to protect such
7   "silent" participants' interests.  FLSA actions under § 216(b) do
8   not present the same concerns.  FLSA plaintiffs make an
9   affirmative and conscious choice to "opt in" and join the
10  litigation and there are no "silent" FLSA participants whose
11  interest need to be protected by the Court.  The lack of a class
12  wide toll of the statute of limitations in FLSA cases should also
13  cause the Court to militate towards providing notice to other
14  persons of their "opt in" rights at the earliest stage of the
15  litigation.  Failing to provide such prompt notice frustrates the
16  FLSA's broad remedial purposes and its specific grant of
17  collective action rights to employees.

18  The Courts Have Fashioned Notice Procedures In FLSA Cases

19      The FLSA is silent on how notification should be given to
20  other similarly situated persons in § 216(b) collective actions.
21  Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d
22  335, 336 (2nd Cir. 1978), was the most notable early Circuit
23  Court decision approving a District Court Order directing written
24  notice to similarly situated persons in a § 216(b) lawsuit.
25  Braunstein was endorsed by Hoffmann-La Roche, Inc. v. Sperling,
26  493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989),

27

5

1  defendants would require its workers to complete their

2  assignments within certain specified budgets, and if they failed

3  to do so the workers would be required to keep working without

4  receiving any additional compensation.  This resulted in the

5  defendants' employees working at least 45 hours a week but only

6  being paid for 40 hours a week.  The plaintiff and defendants'

7  other employees were denied at least 5 hours of overtime pay

8  (time and one-half pay as required by the FLSA) each week.  In

9  addition, the defendants would sometimes work employees six days

10  during the week but only pay its employees for five days, or 40

11  hours of work (the employer would then give the employees an

12  additional paid holiday the following week, the use of such "paid

13  leave time" in lieu of overtime pay is not authorized by the

14  FLSA).

15                          **ARGUMENT**

16  **POINT I.**

17        **NOTICE OF THE PENDENCY OF THIS ACTION SHOULD BE GIVEN**

18        Whether other potential FLSA plaintiffs should receive

19  notice that an FLSA action is pending, and of their right to join

20  such an action, involves a single issue: "Whether the other

21  members of the proposed collective action are 'similarly

22  situated.'" Foster v. The Food Emporium, 2000 W.L. 1737858, 2000

23  U.S. Dist. LEXIS 6053, J. McMahon, (S.D.N.Y. 2000), citing

24  Hoffman v. Sbarro, Inc., 982 F. Supp 249 (S.D.N.Y. 1997).  The

25  issues considered on a Rule 23 motion for class certification,

26  such as numerosity, typicality, commonality and

27

1    representativeness, are <u>not</u> considered on a motion to circulate

2    notice of the pendency of an FLSA action. <u>Id.</u>

3        The case of <u>Kumar Realite v. Ark Restaurants Corp.</u>, 7

4    F.Supp. 2d. 303, 306 (S.D.N.Y. 1998), contains one of the most

5    extensive discussions of the standard that Courts should use when

6    considering motions to give notice of an FLSA lawsuit.

7    Plaintiff's counsel refers at length to the decision in <u>Kumar</u>

8    <u>Realite</u> which accurately summarizes the controlling law and the

9    issues before the Court:

10           The threshold issue in deciding whether to authorize
         class notice in an FLSA action is whether plaintiffs have
11       demonstrated that potential class members are "similarly
         situated." <u>See</u>, 29 U.S.C. § 216(b).  Neither the FLSA nor
12       its implementing regulations define the term "similarly
         situated." However, courts have held that plaintiffs can
13       meet this burden by making a modest factual showing
         sufficient to demonstrate that they and potential plaintiffs
14       together were victims of a common policy or plan that
         violated the law. <u>See</u>, <u>Jackson v. New York Telephone Co.</u>,
15       163 F.R.D. 429, 431 (S.D.N.Y.1995) (at the preliminary
         notice stage, "plaintiffs are only required to demonstrate a
16       factual nexus that supports a finding that potential
         plaintiffs were subjected to a common discriminatory
17       scheme"); <u>Krueger v. New York Telephone Co.</u>, 1993 WL 276058
         (S.D.N.Y. July 21, 1993) (when the litigation is in its
18       early stages, plaintiffs need only provide "some factual
         basis from which the court can determine if similarly
19       situated plaintiffs exist"); <u>Schwed v. General Electric Co.</u>,
         159 F.R.D. 373, 375-76 (N.D.N.Y.1995) ("plaintiffs need only
20       describe the potential class within reasonable limits and
         provide some factual basis from which the court can
21       determine if similarly situated potential plaintiffs
         exist"); <u>Heagney v. European American Bank</u>, 122 F.R.D. 125,
22       127 (E.D.N.Y.1988) (requiring "some identifiable factual
         nexus which binds the named plaintiffs and potential class
23       members together as victims of a particular alleged
         discrimination") (quoting <u>Palmer v. Reader's Digest Ass'n</u>,
24       42 Fair Empl. Prac. Cas. (BNA) 212, 1986 WL 11458
         (S.D.N.Y.1986)).

25           Nor must this Court wait for defendant to complete its
26       discovery before authorizing class notice. To the contrary,
         (so long as the "similarly situated" requirement has been

27

8

met], courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management. See, Braunstein, 600 F.2d at 336 (notice to potential plaintiffs "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits"); Frank v. Capital Cities Communications, Inc., 88 F.R.D. 674, 676 (S.D.N.Y.1981) ("the experiences of other employees may well be probative of the existence vel non of a discriminatory practice, thereby affecting the merits of the plaintiffs' own claims"; Schwed, 159 F.R.D. at 375 ("[E]ven where later discovery proves the putative class members to be dissimilarly situated, notice ... prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]."), Cook v. United States, 109 F.R.D. 81, 83 (E.D.N.Y.1985) ("Certainly, it is 'unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.' ") (citation omitted); Krueger, 1993 WL 276058 at *2 ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.").

The only published decision by this Court discussing this issue was Judge Pro's decision in Bonilla v. Las Vegas Cigar Company, 61 F. Supp. 2d 1129 at 1139 n.6 (D. Nev. 1999). Although Judge Pro did not cite Kumar Realite, or discuss this issue at great length, he did find, as in Kumar Realite, that while plaintiffs bear the burden of proving that they are "similarly situated" this "is a lenient burden for plaintiffs to meet." See, Thiebes v. Wal-Mart, 1999 U.S. Dist. LEXIS 18649, p.8, 1999 U.S. Dist WL 1081357 (D. Or. 1999) and Ballaris v. Wacker Stilltronic Corp., 2001 U.S. Dist. LEXIS 13354, p. 7, 2001 U.S. Dist. WL 1335809 (Bonilla recognized that a § 216(b) FLSA collective action is certified under a much more lenient "similarly situated" standard than that imposed by Rule 23).

1    Defendants will likely argue that Rule 23 controls § 216(b)

2 FLSA collective actions by citing the distinctly minority view of

3 some District Courts, most notably <u>Shuashan v. University of</u>

4 <u>Colorado</u>, 132 F.R.D. 263 (D. Colo. 1990).  This claim by

5 defendants is without merit as the only Circuit Courts to examine

6 this issue have rejected applying Rule 23 to § 216(b) collective

7 actions.  <u>See</u>,  <u>Thiessan v. General Electric Capital Corp.</u>, 267

8 F.3d 1095, 1105 (10th Cir. 2001) (Congress "clearly chose" to not

9 have Rule 23 standards apply to § 216(b) actions) which overruled

10 <u>Shuashan</u>[1] and <u>Hipp v. Liberty National Life Ins. Co.</u>, 252 F.3d

11 1208, 1214 (11th Cir. 2001) (The "similarly situated" requirement

12 of § 216(b) is "not particularly stringent" and implicitly

13 rejecting a Rule 23 approach).

14    The potential plaintiffs in this case are "similarly

15 situated" for FLSA purposes since they were all subject to the

16 same improper "budget limitation" on their work which resulted in

17 them working overtime hours without any additional compensation.

18 A proposed Notice of Pendency is provided at Exhibit "C".

19    It is also suggested that it would better if the Court *not*

20 involve itself with the precise form of notice that is given to the

21

22    [1] The District Courts since <u>Shuashan</u> have almost "unanimously
shunned the Rule 23 standards" for § 216(b) cases. Cole and Bainer,

23 *To Certify or Not to Certify: A Circuit-By-Circuit Primer on the
Varying Standards for Class Certification in Actions Under the Fair*

24 *Labor Standards Act*, 13 B.U. Pub. Int. L. J. 167, 172 (2004).  <u>See</u>,
<u>also</u>, Borgen and Ho, *Litigation of Wage and Hour Collective Actions*

25 *under the Fair Labor Standards Act* 7 Empl. Rts. & Employ. Pol'y J.
129, 135 (2003) (Surveying decisions and finding that a "consensus"

26 has been reached by the District Courts that § 216(b)'s "similarly

27 situated standard does not incorporate Rule 23 requirements.")

potential plaintiffs.   In <u>Heagney v. European American Bank</u>, 122 F.R.D. 125, 130-131 (E.D.N.Y. 1988) the Court granted plaintiffs' counsel leave to circulate a notice of the litigation but declined to Order any particular form of notice.   Plaintiff's counsel suggests that rather than the Court approving a particular form of notice, defendants should be Ordered to provide the names and last known addresses of the potential plaintiffs.  Plaintiff's counsel would be granted leave to send a notification in written form, and through only one mailing to each person, about the pendency of this action.

The contents of plaintiff's counsel's notification about the pendency of this litigation would have to be truthful and disclosed to defendants.   It would be in the form of a letter (not a legal document) and could not in any fashion imply that its contents was approved by the Court or that the Court has endorsed the merits of plaintiff's claims.   It would also not be classified as an "advertisement" under Nevada's rules governing direct mail advertising by attorneys.  The Nevada Rules of Professional Conduct § 197(4) require that all direct mail advertisements by attorneys be prominently marked on the outside as an "advertisement."  This requirement encourages the receiver of such mail to not open it and throw it away as "junk mail."   Imposing such a "marked as advertising" requirement on the FLSA notification in this case would run counter to the purpose of such notification, which is to effectively advise potential plaintiffs of this lawsuit and their right to participate in it.

11

**POINT II**

### THE COURT SHOULD GRANT AT LEAST A SIXTY DAY PERIOD FOR ADDITIONAL PLAINTIFFS TO JOIN THIS LITIGATION

The Court may be reluctant to Order notification of this lawsuit to other potential plaintiffs without imposing some time limit on the joinder of additional plaintiffs. Plaintiff's counsel urges the Court to allow additional plaintiffs to join this litigation for at least sixty days after defendants provide the requested names and addresses to plaintiff's counsel. This time period is reasonable and should not delay the progress of this case. Plaintiff's counsel strongly believes that imposing a shorter time limit (such as thirty days) for persons to come forward and join this litigation would be unfair, as some potential plaintiffs may be traveling or away from home or involved in other matters and not able to respond to a written communication within such a short time span.

**POINT III**

### THE COURT SHOULD TOLL THE STATUTE OF LIMITATIONS IN THIS CASE FOR THE PERIOD OF TIME THAT THIS MOTION IS PENDING

As already noted, under the FLSA the statute of limitations on each individual "opt in" plaintiff's claim continues to run until their consent to joinder is filed with the Court (there is no class wide toll as in Rule 23 class action). It would be unfair to the potential plaintiffs to allow their claims to diminish, or expire, while this Court considers plaintiff's motion.

While the Court cannot completely abrogate the statute of limitations scheme created by the FLSA, it does have the equitable

power to toll such statute of limitations in particular circumstances, including for the time period that the Court was considering a motion to provide notification to other potential plaintiffs. See, Partlow v. Jewish Orphans' Home of Southern California, Inc., 645 F.2d 757, 760 (9th Cir. 1981), abrogated on other grounds by Hoffman-LaRoche, supra. See, also, Owens v. Bethlehem Mines Corp., 630 F. Supp. 309, 312-13 (S.D. W.Va. 1986).

A toll of the statute of limitations while this motion is pending, and until the names and addresses of the potential plaintiffs are provided to plaintiff's counsel, makes excellent sense as a matter of judicial policy and fundamental fairness. Allowing the FLSA statute of limitations to run while this motion is pending rewards the defendants for their unsuccessful motion opposition. Denying a toll of the statute of limitations will cause defendants in other cases to meritlessly oppose FLSA notice of pendency requests to gain the collateral benefit of a continued running of the statute of limitations. The Court should not encourage or reward such conduct by these defendants or any other defendants. Granting the statute of limitations toll sought by the plaintiffs will to put them in the same position that they would have been if defendants had consented to the notice of pendency. Such a result is fair and equitable to all parties also deters defendants in FLSA cases from burdening the Court with unnecessary motions.

**CONCLUSION**

For all the foregoing reasons plaintiff's motion should be granted in its entirety together with such other further and different relief that the Court deems proper.

Dated: Clark County, Nevada
       November 20, 2004

                         Respectfully submitted,

                         Leon Greenberg, Esq.
                         LEON GREENBERG PROFESSIONAL CORPORATION
                         Attorney for the Plaintiff
                         633 South 4ᵗʰ Street - Suite 9
                         Las Vegas, Nevada 89101
                         (702) 383-6085
                         Nevada Bar Number: 008094



Leon Greenberg, Esq.
Leon Greenberg Professional Corporation
Attorney for Plaintiff
633 South 4th Street - Suite 9
Las Vegas, Nevada 89101
(702)383-6085
Fax: (702)385-1827
Nevada Bar Number 8094

CV-S-04-1365-LRH-LRL

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
---------------------------------
JUAN CARMONA MORALES, Individually,
and on behalf of all others similarly
situated,

Plaintiffs,                          COMPLAINT

        -against-

ALLIED BUILDING CRAFTS, INC., GYPSUM
CONSTRUCTION, INC., GYPSUM CONSTRUCTION
WEST, INC., ALLIED CONSTRUCTION CRAFTS,
INC., S.W. BUILDING CRAFTS, SEAN MICHAEL
TAVANAUGH, and "John Does", name fictitious,
actual name and number of such persons
being unknown,

                Defendants.
---------------------------------X
     The Plaintiff, Juan Carmona Morales, by their attorney, Leon

Greenberg Professional Corporation, as and for a Complaint

against the Defendants, state and allege, upon information and

belief, as follows:

        PARTIES, PROCEDURAL AND PRELIMINARY STATEMENT

     1. This Court has jurisdiction over the claims presented on

the First Claim for Relief herein pursuant to 29 U.S.C. §§

201-219, known as the Fair Labor Standards Act ("the FLSA"), and

specifically under the provisions of 29 U.S.C. § 216 b .

     2.  This Court has jurisdiction over the Nevada State Law

claims presented in the Second, Third and Fourth Claims for

Relief pursuant to 28 U.S.C. § 1367(a).

     3.  This case is properly venued before this Court pursuant

1

1  to 28 U.S.C. Sec. 1391 (b).

2      4.   The plaintiff Juan Carmona Morales (the "named

3  plaintiff") is a resident of the State of Nevada and a former

4  employee of one or more of the defendants. Upon information and

5  belief, others similarly situated to said plaintiff are residents

6  of the State of Nevada or other states and are current and former

7  employees of defendants.

8      5.   The defendants Allied Building Crafts, Inc., Gypsum

9  Construction, Inc., Gypsum Construction West, Inc., Allied

10 Construction Crafts, Inc. (collectively the "Corporate

11 Defendants") are corporations incorporated in the States of

12 Nevada or Arizona.

13     6.   The defendant Sean Michael Cavanaugh (the "Individual

14 Defendant") is a shareholder and/or director and/or officer

15 and/or manager of one or more of the Corporate Defendants.

16     7.   The defendants "JOHN DOES", name fictitious, actual name

17 and number of such defendants being unknown, are numerous persons

18 that have committed the same or similar acts and/or omissions as

19 the Individual Defendant and are united in interest with the

20 Individual Defendant and/or one or more of the Corporate

21 Defendants and/or otherwise have the same or similar status as

22 the Individual Defendant as alleged herein in that such "John

23 Does" are "employers" who are liable to the plaintiffs in a

24 manner and for reasons that are the same or similar to that of

25 the Individual Defendant and it is intended that such persons

26 shall be properly identified and then named as party defendants

27

1   in this case under their proper names at a future date.

2                         STATEMENT OF FACTS

3       8.   The named plaintiff is a former employee of one or more

4   of the defendants.

5       9.   The Individual Defendant, knowing full well that their

6   actions were illegal, intentionally committed the various

7   violations of State and Federal Law that are alleged herein.

8       10.   The Individual Defendant was personally financially

9   enriched to a very substantial extent from their illegal scheme

10  to not pay the plaintiffs the full wages that they were owed.

11      11.   The Individual Defendant exercised control over the

12  employment of the plaintiffs in that such Individual Defendant

13  specifically directed how the plaintiffs were to be paid by such

14  Corporate Defendants and/or made decisions to not pay the

15  plaintiffs the overtime pay, minimum wages, and other wages that

16  are complained of herein, and it is further alleged that such

17  conduct by such Individual Defendant has made such Individual

18  Defendant an "employer" or a "person acting on behalf of an

19  employer" within the meaning of the FLSA and the Laws of the

20  State of Nevada and rendered such Individual Defendant personally

21  liable to the plaintiffs for the claims made herein.

22      12.   The defendants engage in for-profit businesses which

23  have gross revenue in excess of $500,000 per annum that are

24  engaged in the production of goods for interstate commerce and/or

25  the use and/or handling of goods which have moved in interstate

26  commerce as such terms are defined in the FLSA and its employers

27

                                 5

1  subject to the jurisdiction of the FLSA.

2      13.   The plaintiffs have been employees of the defendants

3  during the time period pertinent to this complaint, to wit,

4  during a portion of the four years immediately preceding the

5  initiation of this action.  The plaintiffs have performed labor

6  and services in various occupations that are subject to the

7  aforesaid provisions of the FLSA.  These occupations include,

8  but are not limited to, hourly labor in defendants' retail food

9  business.

10     14.   That all of the various violations of law which are

11 alleged herein were committed intentionally and/or willfully by

12 the defendants.

13              THE PROPOSED CLASS CLAIMS AND PARTIES

14     15.   There are numerous persons who are similarly situated

15 to the named plaintiff in respect to the named plaintiff's claims

16 under Nevada Law, in that such similarly situated persons, like

17 the named plaintiff performed substantial work, labor and

18 services for the defendants and did not receive the compensation

19 required by the various Nevada Statutes alleged herein and their

20 contracts of employment and as detailed hereafter such

21 circumstances warrant the granting of class certification as such

22 State Law claims of the plaintiffs pursuant to F.R.C.P. Rule 23.

23     16.   That the persons similarly situated to the named

24 plaintiff and described in paragraph 15 constitute a class of

25 persons that are so numerous that joinder of all such persons

26 individually is impractical, such class consisting of all hourly

27

4

1  wage earners of the defendants who were injured by the
2  defendants' violations of Nevada's statutes, and defendants'
3  breach of contract, that are detailed herein.

4      17.   There are questions of law and fact common to the
5  plaintiff class that predominates over any questions affecting
6  only individual members of the plaintiff class, specifically
7  whether the defendants have any legal obligation to the class
8  members under Nevada Law and if so what is the extent of such
9  obligation.

10     18.   The claims of the named plaintiff are typical of the
11  claims of the above described plaintiff class, in that the
12  interests of the named plaintiff is co-extensive with the
13  interests of the other members of the plaintiff class, there is a
14  lack of adverse interests between the named plaintiff and the
15  other members of the plaintiff class, and common questions of law
16  and fact exist as to the claims of the named plaintiff and the
17  claims of the members of the plaintiff class.

18     19.   The named plaintiff will fairly and adequately protect
19  the interests of the plaintiff class and serve as an adequate
20  representative plaintiff on behalf of the plaintiff class.

21     20.   A class action pursuant to F.R.C.P. Rule 23 is
22  superior to other available methods for the fair and efficient
23  adjudication of the plaintiff class members' claims under Nevada
24  Law.

25

26

27

AS AND FOR A FIRST CLAIM FOR RELIEF
ON BEHALF OF PLAINTIFF JUAN CARMONA MORALES AND
ALL OTHER PERSONS WHO CHOOSE TO FILE A WRITTEN CONSENT
TO JOIN THIS ACTION AS A PLAINTIFF PURSUANT TO
29 U.S.C. § 216(b) OF THE FAIR LABOR STANDARD ACT

21.   Plaintiffs repeat and reiterate each and every allegation previously made herein.

22.   The plaintiff Juan Carmona Morales brings this First Claim for Relief pursuant to 29 U.S.C. § 216(b) on behalf of himself and all other similarly situated persons who consent in writing to join this action as plaintiffs pursuant to 29 U.S.C. § 216(b), and upon information and belief there are numerous such similarly situated persons.

23.   Pursuant to the applicable provisions of the FLSA, including but not limited to 29 U.S.C. § 206 and § 207, plaintiffs were entitled to a minimum wage and an overtime hourly wage of time and one-half their regular hourly wage for all hours worked in excess of forty hours per week, the defendants were the employers or jointly liable co-employers of the plaintiffs, the plaintiffs worked more than 40 hours per week for the defendants, and defendants willfully failed to make said overtime and/or minimum wage payments.

24.   The named plaintiff on behalf of himself and all other similarly situated plaintiffs who consent in writing to join this action, seeks, on this First Cause of Action, a judgment against defendants for unpaid overtime wages and/or minimum wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, such plaintiffs, and also

seeks an award of liquidated damages, attorney's fees, interest
and costs as provided for by the FLSA.

AS AND FOR A SECOND CLAIM FOR RELIEF ON<br>
BEHALF OF PLAINTIFF JUAN CARMONA MORALES<br>
AND ALL PERSONS SIMILARLY SITUATED<br>
PURSUANT TO NEVADA'S LABOR LAW

25.   Plaintiffs repeat and reiterate each and every
allegation previously made herein.

26.   The named plaintiff brings this Second Claim for Relief
pursuant to NRS § 608.016 and NRS § 608.100 for payment of their
full earned wages, NRS § 608.250, for non-payment of minimum
wages, and NRS § 608.019, for payment of unpaid rest periods, on
behalf of himself and the proposed plaintiff class members
against the defendants.

27.   Pursuant to NRS § 608.016, NRS § 608.100 and NRS §
608.250 the plaintiffs were entitled to an hourly minimum wage
and were also entitled to the full payment of their earned wages
and the wages they were promised under their contracts of
employment, the defendants were the employers or jointly liable
co-employers of the plaintiffs, the plaintiffs worked certain
hours for which they received no compensation whatsoever, meaning
they were not paid a minimum wage as required by Nevada law for
such hours of work and were not paid their full promised wages
for such hours of work, certain plaintiffs also, on occasion,
being required by the defendants to incur certain expenses for
supplies and/or services used by the defendants solely for the
benefit of the defendants in the defendants' business, with
expenses not being reimbursed by the defendants and constituting

an unlawful rebate of the plaintiffs' wages in violation of NRS §
608.100.

28.   Pursuant to NRS § 608.019 the plaintiffs were entitled
to paid rest time equal to 10 minutes for every 4 hours of work
or major fraction thereof each day and the defendants failed to
provide the paid rest time required by such statute.

29.   The named plaintiff on behalf of himself and the
proposed plaintiff class members, seeks, on this Second Claim for
Relief, a judgment against defendants for unpaid wages and/or
minimum wages and unpaid rest time, such sums to be determined
based upon an accounting of the hours worked by, and wages
actually paid to, the plaintiffs, and also seeks an award of
attorney's fees, interest and costs, as provided for by Nevada
Law.

                AS AND FOR A THIRD CLAIM FOR RELIEF ON
              BEHALF OF PLAINTIFF JUAN CARMONA MORALES
                 AND ALL PERSONS SIMILARLY SITUATED
              UNDER NEVADA LAW FOR BREACH OF CONTRACT

30.   Plaintiffs repeat and reiterate each and every
allegation previously made herein.

31.   The named plaintiff brings this third claim for relief
for breach of contract under Nevada law.

32.   The plaintiff, Juan Carmona Morales, and those
similarly situated to him, all had contracts of employment with
the defendants whereby the defendants agreed to pay such
plaintiffs a certain set hourly wage for each hour that they
worked.

33.   The defendants breached their contracts with the

8

plaintiffs by failing to pay such promised hourly wages, specifically by failing to pay the plaintiffs anything whatsoever for certain hours of work that they performed and also by requiring certain plaintiffs to incur certain expenses for supplies and/or services used by the defendants solely for the benefit of the defendants in the defendants' business, such expenses not being reimbursed by the defendants.

34.   The named plaintiff on behalf of himself and the proposed plaintiff class members, seeks, on this Third Claim for Relief, a judgment against defendants for the unpaid wages owed to the named plaintiff and the plaintiff class members as a result of the defendants' breach of their contracts with the named plaintiff and the plaintiff class members, and also seeks an award of attorney's fees, interest and costs, as provided for by Nevada Law.

AS AND FOR A FOURTH CLAIM FOR RELIEF ON
BEHALF OF PLAINTIFF JUAN CARMONA MORALES
AND ALL PERSONS SIMILARLY SITUATED
AGAINST THE INDIVIDUAL DEFENDANT UNDER
NEVADA LAW FOR DAMAGES ARISING FROM
THE INDIVIDUAL DEFENDANT'S TORTIOUS CONDUCT

35.   Plaintiffs repeat and reiterate each and every allegation previously made herein.

36.   The named plaintiff brings this fourth claim for relief on behalf of himself and all other similarly situated persons against the Individual Defendant in response to the Individual Defendant's tortious conduct.

37.   The Individual Defendant, either personally or through their agents or employees, owed a fiduciary duty to the

9

1  plaintiffs to have such plaintiffs paid the amounts of money due

2  to them pursuant to their contracts of employment with the

3  defendants.

4      38.   The Individual Defendant personally and maliciously

5  acted to interfere with the plaintiffs' aforesaid contracts of

6  employment with the defendants and tortiously induced a breach of

7  such contracts in that such Individual Defendant, thru in their

8  control and management of the Corporate Defendants made the

9  Corporate Defendants breach their contracts with the plaintiffs

10  by not paying such plaintiffs the monies owed to them under their

11  contracts of employment with the Corporate Defendants, such

12  actions by the Individual Defendant not being otherwise

13  privileged.

14      39.   The named plaintiff on behalf of himself and the

15  proposed plaintiff class members, seeks, on this Fourth Claim for

16  Relief, a judgment against the Individual Defendant for

17  compensatory damages in an amount to be determined, upon

18  information and belief such amount being in excess of Ten

19  Thousand Dollars ($10,000.00) or in such amount as may be

20  determined to be appropriate at the time of trial, along with an

21  award of punitive damages in the amount of Three Hundred Thousand

22  Dollars ($300,000.00) against the  Individual Defendant or such

23  other amount of punitive damages as is allowable under Nevada

24  Revised Statutes § 42.005, along with interest, costs and

25  attorney's fees.

26      WHEREFORE, plaintiffs demand the relief on each cause of

27

1  action as alleged aforesaid, together with costs, interest,

2  attorney's fees and such other relief as the Court deems just.

3      Plaintiffs demand a trial by jury on all issues so triable.

4  Dated: Clark County, Nevada

5         October 1, 2004

6

7                              Yours, etc.,

8                              Leon Greenberg, Esq.

9                              LEON GREENBERG PROFESSIONAL CORPORATION
                               Attorney for the Plaintiff

10                             633 South 4th Street - Suite 2
                               Las Vegas, Nevada 89101

11                             (702) 383-6085
                               Nevada Bar Number: 8094

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Leon Greenberg, Esq.
Leon Greenberg Professional Corporation
Attorney for Plaintiff
633 South 4th Street - Suite 9
Las Vegas, Nevada 89101
(702)383-6085
Fax: (702)385-1827
Nevada Bar Number 8094

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
-------------------------------X Docket #: CV-S-04-1365-LRH-LRL
JUAN CARMONA MORALES, Individually,
and on behalf of all others similarly
situated,
                        Plaintiffs,

            -against-

ALLIED BUILDING CRAFTS, INC., GYPSUM
CONSTRUCTION, INC., GYPSUM CONSTRUCTION
WEST, INC., ALLIED CONSTRUCTION CRAFTS,
INC., S.W. BUILDING CRAFTS, SEAN MICHAEL
CAVANAUGH, and "John Does", name fictitious,
actual name and number of such persons
being unknown,
                        Defendants.
-------------------------------X
            CERTIFICATION OF JUAN CARMONA MORALES

        State of Nevada
        County of Clark ss.:

Juan Carmona Morales, being duly sworn, deposes and states that:

    1.   I am the named plaintiff in this matter and offer this affidavit in connection with my attorney's request to circulate notice of the pendency of this lawsuit to other persons who are current or former employees of the defendants.

    2.   I was an employee doing construction work for one or more of the defendants from December of 1999 through January 28, 2004.  During this time the defendants used a compensation system that failed to pay its employees for all hours that they worked. I and other workers for the defendants were paid by the hour and received checks showing the hours they were supposedly working

1

and their hourly rate.  When I started working for defendants as a foreman I was told that I would be paid $18.54 an hour.  Other construction workers who were not foreman were paid $8.00 or $12.00 or $14.00 an hour.  All of the hourly workers were only paid for 40 hours of work each week and then forced to work extra hours without being paid anything whatsoever.  This happened because the defendants would require that the wages paid for each job that was done not go over a fixed budget.  When it took more hours of work to complete the job than were allowed by the budget the workers did not get paid anything for the extra hours that they worked.  The other hourly workers and I all worked at least 45 hours a week but were only paid for 40 hours of work per week.

3.   I personally worked with a crew of seven additional workers and we all worked at least 45 hours a week but were only paid for 40 hours each week.  I also spoke with many workers in other crews for the defendants and those workers also told me that they, as well, were not being paid for their extra hours that were "over budget" and that this was happening to them all the time.  During the time I worked for the defendants they had approximately 400 or more workers who were working for them in the Las Vegas, Nevada, area.

4.   The defendants also had a policy of sometimes working employees six days a week, for more than 40 hours a week, but only paying the employees for 40 hours of work for the week.  Specifically, the defendants would require that employees work a sixth day, on Saturday, if there was a holiday the following

2

week.  The employer would then pay 8 hours for the holiday but nothing for the work being done on Saturday.  We were told that we were not getting paid for working on Saturday, or getting any extra overtime pay for working six days during one week, because we were getting paid for a day off the following week.

5.  Certain other workers, including myself, were also forced to work additional hours that were not paid.  For example, some workers were required to go to the defendants' office to get supplies and bring them to the job site.  They were not paid for the extra time this involved.  Some workers were also required to wait at job sites for inspectors and were not paid anything for the time, sometimes two hours or more, that they spent waiting.


Juan Carmona Morales

Sworn to before me this
4th Day of November 2004


Notary Public

State of Nevada
County of Clark ss.:

MARCO VINICIO CAMPOS, being duly sworn, deposes and states that:

On November 4th 2004, I translated verbally the above statement from English into Spanish and read it to Juan Carmona Morales  as that person does not read English or speak English fluently.  Juan Carmona Morales swore to me that the above statement was true and correct.

Marco Vinicio Campos

Sworn to before me this 4th day of November, 2004

Notary

3

TO BE DISTRIBUTED IN ENGLISH AND SPANISH

INSERT CAPTION OF CASE

NOTICE OF PENDENCY OF COLLECTIVE ACTION LAWSUIT
THIS LAWSUIT SEEKS TO COLLECT MONEY THAT YOU MAY BE
OWED FOR WORK YOU HAVE DONE BUT NOT BEEN PROPERLY PAID
THE FULL WAGES REQUIRED BY LAW

TO: All persons currently or previously employed by
ALLIED BUILDING CRAFTS, INC., GYPSUM CONSTRUCTION,
INC., GYPSUM CONSTRUCTION WEST, INC., ALLIED
CONSTRUCTION CRAFTS, INC., S.W. BUILDING CRAFTS
(collectively referred to as "Gypsum") as construction
workers and who were compensated on a hourly basis from
anytime from [INSERT EARLIEST POSSIBLE DATE UNDER THREE
YEAR STATUTE OF LIMITATIONS INCLUDING ANY TOLL IMPOSED
BY THE COURT] to the present.

RE: Claim for unpaid overtime and liquidated under the
Fair Labor Standards Act of 1938 (the "FLSA")

Introduction
    You are receiving this Notice to let you know that
this lawsuit is pending against Gypsum and seeks to
collect unpaid overtime wages and liquidated (double)
damages for certain work performed by its construction
workers.  It is claimed that hourly construction
workers were improperly denied pay (they received no
pay whatsoever) for certain hours of work that they
performed that should have been paid on an overtime
(time and one-half) basis.  It is also claimed that
such workers may have been paid for certain hours of
work but not paid the proper overtime (time and one-
half) rate of pay.

    The purpose of this notice it to advise you about

Page 1 of  5

this lawsuit and give you an opportunity to join this lawsuit and possibly recover unpaid overtime wages and additional liquidated damages (money) owed to you by Gypsum.

This Notice is not an expression by the Court of any opinion as to the merits of any claims or defenses asserted by any party to this action.

Description of the Lawsuit

On October 1, 2004, plaintiff Juan Carmona Morales brought this lawsuit against Gypsum.  Specifically, the plaintiff claims he and other hourly construction workers employed by Gypsum were not properly paid overtime pay (one and one-half times their normal hourly rate) for all hours they worked over forty (40) hours per week.  Plaintiff also seeks liquidated damages (double damages) in an amount equal to their unpaid overtime wages.

Composition of the Class

The plaintiff seeks, under the FLSA, to sue on behalf of themselves and all other similarly situated hourly construction worker employees of Gypsum who were not paid proper overtime wages.

Your Right To Participate In This Suit

If you fit the definition above, you may join this suit by mailing the "Consent To Become a Party Plaintiff" form to Plaintiffs' counsel at the following address:


INSERT MAILING ADDRESS


Effect Of Joining This Suit

If you choose to join in the suit, you will be bound by the decision of the court, whether it is favorable

or unfavorable.

The attorney for the class plaintiff is being paid on a contingency fee basis, which means that if there is no recovery there will be no attorneys' fee. If the plaintiffs prevail in this litigation, the attorney for the class will request that the Court either determine or approve the amount of attorney's fee and costs they are entitled to receive for their services.

If you return the consent form attached to this Notice, you are agreeing to: 1) designate the plaintiff as your agent to make decisions on your behalf concerning this lawsuit; 2) the method and manner of conducting this lawsuit; 3) the entering of an agreement with plaintiff's counsel concerning attorneys' fees and costs; and 4) all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the representative plaintiff will be binding on you if you join this lawsuit. However, the Court has retained jurisdiction to determine the reasonableness of any settlement with the defendants, and any agreement concerning the reasonableness of any attorney's fees and costs that are to be paid to the plaintiff's counsel.

Legal Effect In Not Joining This Suit

If you choose not to join in this suit, you will not be affected by any judgment or settlement rendered in this lawsuit, whether favorable or unfavorable to the class, meaning you will collect no money from the FLSA portion of this lawsuit and will not be prevented from bringing your own FLSA lawsuit. If you choose not to join in this lawsuit, you are free to file your own lawsuit under the FLSA, but you will then be responsible for all costs, including counsel fees, associated with your lawsuit.

Statute of Limitations on Potential Claims

The maximum period of time that you can collect unpaid overtime wages under the FLSA is three (3) years

from when you worked the hours, but were not paid, the unpaid overtime wages at issue.  This statute of limitations continues to expire until you file a written consent to join this lawsuit with the Court or initiate your own lawsuit to collect such unpaid overtime wage.  If you choose not to join this litigation by signing and returning a consent you may wish to promptly pursue litigation on your own to prevent the statute of limitations from adversely affecting your claim.

No Retaliation Permitted

Federal Law prohibits Gypsum from discharging you or in any other manner discriminating against you because you have exercised your rights under the FLSA to seek compensation.

Your Legal Representative If You Join

If you choose to join this lawsuit and agree to be represented by the named plaintiff through their attorney, your counsel in this action will be:

INSERT NAME AND ADDRESS

Further Information

Further information about this Notice and about this lawsuit may be obtained by contacting plaintiff's counsel: INSERT CONTACT INFORMATION

CONSENT TO JOIN PURSUANT TO *29 U.S.C. § 216(b)*

TO: THE CLERK OF COURT AND TO EACH PARTY AND COUNSEL OF RECORD

1. I reside at ____ (Street) ____ (City)___ (State)___ (Zipcode)

2. My home telephone number is _____. (leave blank if you do not have a telephone).

3. My current email address (if any) is ___ .

4. I understand that a lawsuit has been brought under the *Federal Fair Labor Standards Act*. I have read and I understand the notice accompanying this consent.   I agree to be bound by any judgment of this Court in this lawsuit.

5. I understand and agree that I designate the named plaintiff as my agent and understand that I will be bound by the decisions and agreements made by and entered into by said plaintiff.

6. I understand that I will be represented by INSERT COUNSEL NAMES and that this Court has retained jurisdiction to determine the reasonableness of any settlement with the defendants and any agreement concerning the reasonableness of any attorneys, fees and costs that are to be paid to the plaintiff's counsel.

___ (Signature)     ___ (Type or Print Name)

Leon Greenberg, Esq.
Leon Greenberg Professional Corporation
Attorney for Plaintiff
633 South 4ᵗʰ Street - Suite 9
Las Vegas, Nevada 89101
(702)383-6085
Fax: (702)385-1827
Nevada Bar Number 8094

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
------------------------------X Docket #: CV-S-04-1365-LRH-LRL
JUAN CARMONA MORALES, Individually,
and on behalf of all others similarly
situated,

                    Plaintiffs,

          -against-

ALLIED BUILDING CRAFTS, INC., GYPSUM
CONSTRUCTION, INC., GYPSUM CONSTRUCTION
WEST, INC., ALLIED CONSTRUCTION CRAFTS,
INC., S.W. BUILDING CRAFTS, SEAN MICHAEL
CAVANAUGH, and "John Does", name fictitious,
actual name and number of such persons
being unknown,

                    Defendants.
------------------------------------X
ATTORNEY'S AFFIRMATION OF SERVICE BY MAIL

Leon Greenberg, an attorney duly licensed to practice law in the
State of Nevada, and a member of the bar of this Court, hereby
affirms, under the penalties of perjury, that:

     On November 22, 2004 I served the within PLAINTIFF'S MOTION
FOR CIRCULATION OF A NOTICE OF PENDENCY AND OTHER RELIEF by
depositing a true copy thereof in a postage paid wrapper, first
class mail, in an official depository under the exclusive care
and custody of the United States Postal Service within the State
of Nevada, addressed to each of the following persons at the last
known address set forth after each name:

TO:

Littler Mendelson
Attorneys At Law
3960 Howard Hughes Parkway - Suite 300
Las Vegas, Nevada 89109-0920
Attention: Rick D. Roskelley, Esq.

Clark County, Nevada
Affirmed this 22ND day of nov. 2004

                              LEON GREENBERG
                              Nevada Bar # 8094

1