UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JUAN CARMONA MORALES, et al., | ) |
| Plaintiffs, | ) |
| v. | ) CV-S-04-1365-LRH-LRL |
| ALLIED BUILDING CRAFTS, INC., et al., | ) **ORDER** |
| Defendants. | ) |

Before the court is plaintiff's Motion for Circulation of Notice of the Pendency of this Action Pursuant to 29 U.S.C. § 216(b) and for Other Relief (#6); plaintiff's Motion to Amend the Complaint (#10); defendants' Countermotion to Strike Notices of Filing of Consents to Joinder and to Disqualify Plaintiff's Counsel (#13); and plaintiff's Motion to File a Supplement (#21). The court has considered the papers in support of and in opposition to the motions, and the arguments presented by counsel during a hearing on March 1, 2005.

## BACKGROUND

This is a collective action brought by Juan Carmona Morales ("plaintiff") against defendants (collectively "Allied"), on behalf of himself and others similarly situated pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 216(b)).[1] Plaintiff was formerly employed as a foreman in Allied's construction business. Plaintiff alleges that Allied failed to compensate him and other similarly situated employees for overtime hours worked. He seeks to join Jorge Calderon Gutierrez and Rosalino Morales (a plasterer and a laborer

---

[1] Plaintiff also makes certain related claims under Nevada law. Plaintiff brings these claims as an "opt out" class action pursuant to Fed. R. Civ. P. 23.

**23**

formerly supervised by plaintiff) as representative plaintiffs in his FLSA collective action.[2] He also seeks an order directing that other similarly situated Allied employees be given notice of the pendency of this action and an opportunity to file written consents to join as party plaintiffs.[3] Allied contends that plaintiff and the potential "opt in" plaintiffs are not similarly situated. Allied further contend that there is an inherent conflict of interest which precludes joinder by any of plaintiff's former crew members, including Gutierrez and Morales.

## DISCUSSION

*I.     Notice and the "Similarly Situated" Requirement*

The FLSA allows for a collective action, a type of class action, for employees who are "similarly situated" to the plaintiffs and who file a consent in writing with the court (*i.e.*, opt in to the case). 29 U.S.C. § 216(b); *Doe v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000). If an employee does not opt in by filing a written consent, he is not bound by the outcome of the collective action and may bring an individual action. *Id.* District courts have discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b). *See Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165 (1989).

Neither the FLSA nor the Ninth Circuit has defined "similarly situated." The majority of courts utilize a two-tiered approach in determining whether plaintiffs are similarly situated. *See, e.g., Pfohl v. Farmers Ins. Group*, 2004 U.S. Dist. LEXIS 6447, *8 (C.D. Cal. 2004). The first determination is based on the pleadings and any affidavits that have been submitted. *Id.* Generally, the plaintiff bears the burden of demonstrating that there is "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a

---

[2] Gutierrez and Morales have filed consents to joinder.

[3] At this time, plaintiff does not make a request for Rule 23 certification with respect to the state claims.

2

1  particular alleged [policy or practice]." *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1139, n.6 (D. Nev. 1999) (citation omitted); *see also Kumar Realite v. Ark Rest. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) (plaintiffs can show that potential class members are similarly situated "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law"). Because of the minimal evidence at this stage, the initial determination is usually made under a fairly lenient standard and typically results in conditional class certification. *Id.*; *see also Grayson v. Kmart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996); *Camp v. Progressive Corp.*, 2002 U.S. Dist. LEXIS 21903, * 11 (E.D. La. 2002) ("The cases in which conditional certification has been granted or upheld are clear that the 'similarly situated' standard ... is lenient, plaintiff's burden is not heavy, the evidence needed is minimal and the existence of some variations between potential claimants is not determinative of a lack of similarity.") (citations omitted). Once discovery is complete, the court must then make a factual determination regarding the propriety and scope of the class. *Pfohl, supra.* Under the second tier, the court considers factors such as (1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations. *Id.*

This court is persuaded that the two-tiered majority approach best serves the purpose of the FLSA. Because the parties have not engaged in any discovery, the issue therefore is whether, based on the pleadings and any affidavits, the potential class should be given notice of the action. Here, the proposed class consists of approximately 400 construction workers, including foremen (like plaintiff) and plasterers and laborers (like Gutierrez and Morales), who were engaged in performing stucco and plastering work and were employed on an hourly basis.[4]

---

[4] Allied contends that plaintiff has not sufficiently defined who is to be included in the class. Plaintiff has expressly defined the class in his reply. *See* Reply (#11) at 6.

3

Plaintiff alleges that Allied utilized a compensation system that failed to properly pay members of the proposed class. *See* Mot. (#6), Exh. B at ¶ 2; *see also* Reply (#11), Exh. C at ¶ 8. Specifically, plaintiff contends that he and his co-workers were required to complete their assignments within certain specified pre-set budgets, and if they failed to do so they would be required to keep working without receiving any additional compensation. Mot. (#6), Exh. B at ¶ 2; Reply (#11), Exh. C at ¶¶ 3-4. Plaintiff also alleges that Allied had a policy of working employees six days a week, for more than 40 hours a week, but only paying employees for 40 hours of work for the week. Mot. (#6), Exh. B at ¶ 4. The proposed representative plaintiffs, Gutierrez and Morales, have also submitted affidavits asserting that they, along with plaintiff and other employees of the proposed class, were not paid for hours in excess of the labor budget. Reply (#11), Exhs. A & B, at ¶ 2.

Plaintiff has sufficiently alleged a "common practice and policy" violating the FLSA, mainly that Allied's hourly employees were forced to work "off the clock" due to budget limitations. Additionally, the joinder of Gutierrez and Morales supports plaintiff's sworn representations that a potential class of similarly situated employees does indeed exist. Allied's argument that plaintiff is not similarly situated to the potential plaintiffs incorrectly focuses on the more stringent second tier analysis. Moreover, Allied's claim that it has "competent evidence disproving plaintiff's allegations" is an issue that may be more appropriately addressed on a motion for decertification or motion for summary judgment. Accordingly, applying, as it must, a lenient standard, the court finds that plaintiff has provided sufficient support to meet the threshold showing of the existence of similarly situated potential plaintiffs. *Cf. Camp, supra* (holding that plaintiff presented "the bare minimum of evidence" necessary to show that she was similarly situated to other potential plaintiffs where she presented no affidavits and relied exclusively on evidence discovered by defendant and the fact allegations in her complaint).

The court therefore conditionally certifies a class consisting of all current and former hourly employees of Allied who are or were employed as construction workers, including

4

foremen, plasterers, and laborers, engaged in performing stucco and plastering work and who did not receive overtime pay during any of the three years[5] preceding the filing of this lawsuit.[6] The class is certified for the purpose of notifying proposed class members of the pendency of this suit. Plaintiff will be given the opportunity to discover and contact these individuals via court authorized notice to apprize them of this action. *See, e.g., Hoffmann-LaRoche, supra* at 169-170. The court's ruling, however, does not, at this time, hold that all members of the proposed class who will be sent notices are, in fact, similarly situated to plaintiffs. *See, e.g., Thiebes v. Wal-Mart Stores, Inc.*, 1999 U.S. Dist. LEXIS 18649, *9 (D. Or. 1999) (emphasizing that certification of the collective action was "only for notice and discovery purposes); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 464 (N.D. Cal. 2004) (where court certified FLSA class for the limited purpose of providing notice to prospective class members). This determination cannot be made until discovery has largely been completed. Should discovery reveal that plaintiff is not similarly situated to some or all of the persons who may choose to opt

---

[5] Allied contends that this court should limit notice to the last two years. The FLSA provides a three year statute of limitations if a violation is "willful," otherwise it imposes a two year statute of limitations. Given plaintiff's claim that Allied's violations were willful, *see* Complaint ¶ 14, the temporal scope of the class will be limited to three years. *See, e.g., Bonilla, supra* at 1141. The court, however, makes no finding as to the willfulness of the allegations. If discovery establishes that plaintiff cannot meet his burden of proving willfulness, Allied can move for decertification or summary judgment. *Cf. White v. Osmose*, 204 F. Supp. 2d 1309, 1318 n. 9.

[6] Relying on *Partlow v. Jewish Orphans' Home of S. Cal., Inc.*, plaintiff contends that this court should toll the statute of limitations for the period of time that this motion has been pending and until a notice of pendency is circulated. 645 F.2d 757, 760 (9th Cir. 1981) (implying the doctrine of equitable tolling into the FLSA). *Partlow* is distinguishable. There, without leave of court, counsel for the named plaintiffs sent letters to current and former employees of defendant soliciting their consent to become parties to the law suit. *Id.* at 758. The district court found that because counsel's communication was "clearly contrary to law," the consents were improperly filed and ineffective. *Id.* Hence, the court tolled the statute of limitations for a period of forty-five days to allow the sixty-nine employees to file proper consents with the court. *Id.* The Ninth Circuit affirmed, reasoning that without the tolling "sixty-nine individuals would be barred by the FLSA statute of limitations from instituting a collective action to which they filed timely consents that, through no fault of their own, were subsequently found invalid." *Id.* 759. Here, unlike *Partlow*, plaintiff has not established that "*substantial* policy reasons" justify tolling the statute of limitations. *Id.* at 761 (emphasis added); *see also Bonilla, supra* at 1140.

5

in, Allied may later file a motion for decertification. *See, e.g., Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995) ("[E]ven where later discovery proves the putative class members to be dissimilarly situated, notice ... prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA].").

*II.    "Employer" and Conflict of Interest*

Allied contends there is an inherent conflict of interest which precludes joinder in the collective action by any of plaintiff's former crew members, including the proposed representative plaintiffs, Gutierrez and Morales. Specifically, Allied contends that the conflict arises because plaintiff is an "employer" within the meaning of the FLSA and is potentially liable for the claims of his former plasterers and laborers.[7] Accordingly, Allied seeks an order striking Gutierrez' and Morales' consents to joinder and disqualifying plaintiff's counsel from this action.

The parties agree that the FLSA provides an "employee" with a private right of action against his "employer" when that employer fails to pay overtime wages to the employee who works in excess of forty hours per week. 29 U.S.C §§ 203, 207. The parties disagree, however, as to whether plaintiff is an employer within the meaning of the FLSA. Additionally, they disagree on the standard to be applied in making this determination.

Under the FLSA, an "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In order to effectuate the FLSA's broad remedial purposes, this definition is given an expansive interpretation. *Real*

---

[7] Relying on *White v. Osmose*, 204 F. Supp. 2d 1309 (M.D. Ala. 2002), Allied also seems to contend that a conflict exists, whether or not plaintiff was an employer, because plaintiff himself may have been actively involved in the unlawful practice of failing to report overtime hours. *White*, however, fails to provide any support for the proposition that plaintiff could be held liable under the FLSA merely as an employee. Indeed, although the court did not engage in an employer-employee analysis, the court's holding implies that the foreman in *White* was an employer. *See Id.* at 1314-15 (citing to *Herman v. RSR Sec. Servs.*, 172 F.3d 132 (2nd Cir. 1999), for the proposition that "individuals may be liable under the FLSA where ... they may be deemed an 'employer.'").

6

*v. Driscoll Strawberry Ass'n*, 603 F.2d 748, 754 (9th Cir. 1979). Whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Id.* (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). "The test, as always, must focus on the economic realities of the total circumstances." *Id.* at 756; *see also Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2nd Cir. 1999)(the determination of an employer-employee relationship must be made "with an eye to the 'economic reality' presented by the facts of each case").

In determining the existence of an employer-employee relationship, the Ninth Circuit has established what it refers to as "a useful framework." *Bonnette v. Cal. Heath and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). Although "not etched in stone," the Ninth Circuit has stated that the following factors should be considered in making such a determination: (1) whether the alleged employer had the power to hire and fire the employees; (2) whether the alleged employer supervised and controlled employee work schedules or conditions of employment; (3) whether the alleged employer determined the rate and method of payment; and (4) whether the alleged employer maintained employment records. *Id.*; *see also Lambert v. Ackley*, 180 F.3d 997, 1012 (9th Cir. 1999).

Plaintiff acknowledges that in determining whether an individual is an employer within the contemplation of the FLSA, the court must consider the "economic realities" or the totality of the circumstances. Plaintiff contends, however, that in order for this court to find that he is an FLSA employer, the court must find that he exercised both "workplace" and "economic" control over the employment relationship. Plaintiff contends that the court must examine the four *Bonnette* factors in order to determine whether an individual has sufficient "workplace" control. Plaintiff further contends that "economic" control requires proof that the individual controls the "purse strings" of the business operation. Assuming he had "workplace control," plaintiff argues that he lacked "economic control" because Allied had absolute control over the salaries of its employees. Thus, he argues that because he lacked "economic control" he is not

7

1 an FLSA employer, and because he is not an employer, there is no conflict of interest.

2     The court disagrees that an individual must exercise both "workplace control" and "economic control" to be considered an employer within the meaning of the FLSA. *Bonnette* did not expressly hold that "economic control" is a necessary element of the economic realities test. *See generally, Bonnette, supra.* At most, in considering what plaintiff refers to as "economic control," it appears that the Ninth Circuit considered an individuals "control over the purse strings" as an additional *factor* among the four *non*-dispositive factors expressly considered by the lower court. Moreover, it is doubtful that the so called "economic control" factor should be considered separately and distinctly from the four *Bonnette* factors. Rather, it seems that "economic control" is a term of art used to describe whether the alleged employer (1) determined the rate and method of payment, and (2) maintained employment records. *See, e.g., Baystate Alternative Staffing v. Herman*, 163 F.3d 668, 675-76 (1st Cir. 1998).[8]

    Even though Allied concedes that plaintiff did not actually have "control over the purse strings," "the ultimate determination must be based upon the circumstances of the whole activity." *Real, supra* at 754. At this time, the court cannot properly evaluate whether the "economic realities" dictate that plaintiff should be deemed an employer for purposes of Allied's Countermotion (#13). There has been no discovery in this case, and the court cannot make its determination based solely on the affidavits submitted by the parties. Consequently,

---

[8] Plaintiff also relies on *Baird v. Kessler* for the proposition that an individual who lacks "economic control" is not an FLSA employer. 172 F. Supp. 2d 1305 (E.D. Cal. 2001). Like *Bonnette, Baird* did not expressly hold that "economic control" is dispositive. Instead, the court found that "control of the purse strings" was a "crucial aspect of control." *Id.* at 1311-1312. Significantly, rather than concluding its analysis, the court went on to consider other aspects of control over the work environment, *i.e.*, lack of control over how many employees were necessary and whether or not more employees could be hired. *Id.*

    Moreover, *Baird* is distinguishable. The alleged employers in *Baird* were managers employed by the California Department of Corrections (CDC) and had been sued in their individual capacities. The State of California was not a party to the action and "could not be a party under the Eleventh Amendment." *Id.* at 1312. Consequently, the court held that "if [it] were to find in favor of plaintiffs ..., without the State as a party, [it] could not give the FLSA its intended remedial effect because the individual defendants, without the funds of the State, are unlikely to be able to provide the relief plaintiffs are seeking." *Id.*

8

these issues must await further discovery.

For all of the foregoing reasons, and with good cause appearing,

IT IS ORDERED that defendants' Countermotion to Strike Notices of Filing of Consents to Joinder and to Disqualify Plaintiff's Counsel (#13) is DENIED without prejudice.

IT IS FURTHER ORDERED that plaintiff's Motion to File a Supplement (#21) is GRANTED.

IT IS FURTHER ORDERED that plaintiff's Motion to Amend the Complaint (#10) is GRANTED.

FINALLY, IT IS ORDERED that plaintiff's Motion for Circulation of Notice of the Pendency of this Action Pursuant to 29 U.S.C. § 216(b) and for Other Relief (#6) is GRANTED to the following extent:

(1) The class is conditionally certified with respect to all current and former hourly employees of Allied who are or were employed as construction workers, including foremen, plasterers and laborers, engaged in performing stucco and plastering work and who did not receive overtime pay during any of the three years preceding the filing of this lawsuit;

(2) Allied shall, not later than March 25, 2005, provide to plaintiff the names and addresses of all of the individuals in the conditionally certified class;

(2) In the event that the parties are unable to stipulate to a Notice of Pendency of Fair Labor Standards Act Lawsuit and Consent to Join Form, then plaintiff shall, not later than March 30, 2005, serve (by hand delivery or fax) and file his proposed Notice. Allied's response shall be served (by hand delivery or fax) and filed not later than April 4, 2005. Courtesy copies of the response and reply shall be delivered to chambers (Room 3014) when the originals are filed; and

. . .

. . .

. . .

9

(3) Plaintiff is hereby required to file all Consents to Become Party Plaintiffs in this lawsuit within forty-five (45) days of the court's approval of the Notice.

DATED this 16th day of March, 2005.

*/s/ Lawrence R. Leavitt*

**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**